## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LAFAYETTE D. COSBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 15-3213-KHV** |
| WARDEN DAN SCHNURR, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, pro se petitioner LaFayette D. Cosby, an inmate at Ellsworth Correctional Facility in Ellsworth, Kansas, seeks a writ of habeas corpus claiming various constitutional violations allegedly arising from his state court conviction for first degree murder. Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody ("Petition") (Doc. #1) filed September 2, 2015. For reasons stated below, the Court denies the petition and denies a certificate of appealability.

## Procedural And Factual Background

In 2004, a jury in the District Court of Douglas County, Kansas found petitioner guilty of first degree murder. Petitioner appealed to the Kansas Supreme Court.[1] Based on prosecutorial misconduct, the Kansas Supreme Court reversed the conviction and remanded the case for a new trial. See State of Kansas v. Cosby, 285 Kan. 230, 169 P.3d 1128 (2007).

---

[1] Pursuant to K.S.A. § 22-3601, any appeal from a district court's final judgment in a criminal case involving a class A felony shall be taken directly to the Kansas Supreme Court. See K.S.A. § 22-3601(b)(2).

In 2008, after a second trial, a jury again found petitioner guilty of first degree murder.[2]

Highly summarized, the evidence at the second trial showed as follows:

> In 2004, [petitioner] and two other men attended a Senegal Independence Day event in Kansas City, Missouri, before returning to their apartment for a small gathering that same night. The group of friends, acquaintances, and neighbors that gathered at the apartment included Robert Martin. Martin and two others joined the party in the early hours of the morning; shortly thereafter, Martin and [petitioner] were witnessed lying on a bed together, laughing and talking. Martin and [petitioner] soon joined the rest of the group in the living room. In the midst of a conversation in which Martin referenced smoking marijuana, [petitioner] left the room and returned with a handgun. When Martin reached into his pocket, possibly for marijuana, [petitioner] walked up to him and shot him three times in the chest. Almost everyone ran out of the apartment, although a few of the guests returned to retrieve various personal effects. Near dawn, one of [petitioner's] roommates finally contacted the police.

Cosby v. State of Kansas, No. 109,880, 2014 WL 4435848, at *1 (Kan. App. Sept. 5, 2014).[3]

Petitioner appealed. Petitioner argued that (1) the trial court improperly excluded as hearsay a question that he asked police regarding whether they had found a gun; (2) the trial court should have instructed the jury on the lesser included offense of voluntary manslaughter; (3) evidence regarding premeditation was insufficient to support the conviction; and (4) the prosecutor engaged in misconduct. See Kansas v. Cosby, 293 Kan. 121, 122, 262 P.3d 285, 287 (2011). On September 9, 2011, the Kansas Supreme Court affirmed the second conviction. Id., 293 Kan. at 137, 262 P.3d at 296.[4]

---

[2] The state district court sentenced petitioner to 25 years in prison. See Kansas Sentencing Guidelines Journal Entry Of Judgment filed April 4, 2008 in Case No. 04CR514 (D. Ct. Douglas Co.).

[3] In his petition for review in the Kansas Supreme Court, petitioner agreed that the facts set forth by the Kansas Court of Appeals "are substantially correct." Appellant's Petition For Review at 2, Case No. 13-109,880-S.

[4] The record does not reflect whether petitioner sought review in the United States
(continued...)

On September 10, 2012, in the District Court of Douglas County, Kansas, petitioner filed a

pro se motion for post-conviction relief under K.S.A. § 60-1507.[5]  See KSA 60-1507 Motion,

Case No. 2012-CV-000487 (D. Ct. Douglas Co.), Record-Vol. No. 1.  As grounds for relief,

petitioner asserted that by refusing his requests to appoint substitute trial counsel, the trial court

violated his constitutional rights.  See id. at 9-10.  Petitioner asserted that because appellate counsel

---

[4](...continued)
Supreme Court.

[5]      Section 60-1507 states as follows:

(a) Motion attacking sentence. A prisoner in custody under sentence of a court of
general jurisdiction claiming the right to be released upon the ground that the
sentence was imposed in violation of the constitution or laws of the United States,
or the constitution or laws of the state of Kansas, or that the court was without
jurisdiction to impose such sentence, or that the sentence was in excess of the
maximum authorized by law, or is otherwise subject to collateral attack, may,
pursuant to the time limitations imposed by subsection (f), move the court which
imposed the sentence to vacate, set aside or correct the sentence.

(b) Hearing and judgment. Unless the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief, the court shall cause
notice thereof to be served upon the county attorney, grant a prompt hearing thereon,
determine the issues and make findings of fact and conclusions of law with respect
thereto. The court may entertain and determine such motion without requiring the
production of the prisoner at the hearing.  If the court finds that the judgment was
rendered without jurisdiction, or that the sentence imposed was not authorized by
law or is otherwise open to collateral attack, or that there has been such a denial or
infringement of the constitutional rights of the prisoner as to render the judgment
vulnerable to collateral attack, the court shall vacate and set the judgment aside and
shall discharge the prisoner or resentence said prisoner or grant a new trial or correct
the sentence as may appear appropriate.

(c) Successive motions. The sentencing court shall not be required to entertain a
second or successive motion for similar relief on behalf of the same prisoner.

K.S.A. § 60-1507.

-3-

had failed to raise his claims on direct appeal, he had not previously presented them to any court. Id. ¶ 16.

On October 31, 2012, petitioner filed a motion to amend his Section 60-1507 motion. See Motion To Amend Pleading, Case No. 2012-CV-000487 (D. Ct. Douglas Co.), Record-Vol. No. 1. Specifically, petitioner sought to include claims that the trial court violated his constitutional rights by (1) during a hearing on his motion to dismiss based on alleged police destruction and manipulation of exculpatory evidence, refusing to hear impeachment and bad faith evidence, id. at 42; (2) appointing counsel who was ineffective and biased, id. at 43; and (3) appointing ineffective counsel who failed to present his version of facts to the jury and therefore effectively required him to testify on his own behalf in the first trial, id. at 44. Petitioner also sought to add claims that (1) trial counsel was ineffective in failing to object to prosecutorial misconduct involving the use of perjured testimony, id. at 44; (2) trial counsel was ineffective in failing to object to prosecutorial misconduct involving the improper bolstering of state witnesses, id. at 45; (3) in light of new facts, the State presented insufficient evidence of first degree murder, id. at 45; and (4) the cumulative effect of trial errors caused substantial prejudice and denied him a fair trial, id. at 46.

On December 5, 2012, the state district court issued a Memorandum Decision which denied relief under Section 60-1507. See Case No. 2012-CV-487, Record-Vol. No. 2. It found that although petitioner complained about counsel before and during the first trial, he did not object when the court appointed the same attorney to represent him in the second trial. See id. at 5-6. It also found that petitioner waited until the eve of the second trial to complain that counsel was not investigating issues and had a conflict of interest based on his relationship with police. See id. at 6-7. Further, it found that petitioner raised no facts or law to support a claim that in failing to appoint

substitute trial counsel, the trial court abused its discretion. See id. at 8-11. The state district court concluded that the files and records of the case conclusively showed that petitioner was entitled to no relief. See id. at 12.[6]

Petitioner appealed to the Kansas Court of Appeals. See Brief Of Appellant filed February 18, 2014, Case No. 13-109,880-A.[7] Petitioner asserted that the state district court erred in (1) summarily dismissing his Section 60-1507 claims; (2) not ruling on issues raised in his motion to amend; and (3) not holding a preliminary or evidentiary hearing regarding non-record facts which would bear on the merits of his claims. See id. at 1-2, 4-12.

On September 5, 2014, the Kansas Court of Appeals affirmed. See Cosby v. Kansas, No. 109,880, 2014 WL 4435848 (Kan. App. Sept. 5, 2014). On de novo review, the Kansas Court of Appeals found that (1) petitioner did not show that the trial court abused its discretion in failing to appoint substitute trial counsel, see id. at *5-8; (2) because the motion to amend raised new issues that were untimely and did not relate back, the state district court did not need to address them, see id. at *2-4; and (3) because the record conclusively showed that petitioner was entitled to no relief, the state district court need not hold a hearing, see id. at *8.[8]

_____

    [6]    On December 17, 2012, petitioner filed a motion for reconsideration. See Motion For Reconsideration in Case No. 2012-CV-87, Record-Vol. No. 2. On January 25, 2013, the state district court overruled the motion. See Order Denying Petitioner's Motion To Reconsider in Case No. 2012-CV-487, Record-Vol. No. 2.

    [7]    Appointed counsel represented petitioner on appeal.

    [8]    Regarding petitioner's argument that the state district court should have addressed new claims in his motion to amend, the Kansas Court of Appeals found that the state district court need not address issues which he untimely raised. See Cosby, 2014 WL 4435848, at *2. The Kansas Court of Appeals found that because petitioner filed the motion to amend on October 31, 2012 – more than a year after his conviction became final on October 3, 2011 – only claims that arose out of the same conduct or occurrence alleged in his original motion were timely. Id. at *3.
(continued...)

On October 3, 2014, petitioner filed a petition for review in the Kansas Supreme Court.  See Appellant's Petition For Review, Case No. 13-109,880-S.[9]  Petitioner asserted that in denying his Section 60-1507 claims, the lower state courts applied the wrong standard of review, which precluded him from presenting the merits of his ineffective assistance claim.  Id. at 2-3, 6-7.[10]  Notably, petitioner did not challenge the Kansas Court of Appeals ruling that the ineffective assistance claim did not relate back to his original claim and was therefore untimely.[11]  Petitioner

---

[8](...continued)

As noted, in the original motion, petitioner asserted claims based on the trial court's failure to appoint substitute counsel.  The Kansas Court of Appeals found that of the seven claims asserted in his motion to amend, only two claims arose out of the same conduct or occurrence as the original claim, i.e. (1) that the trial court appointed counsel who was ineffective and biased; and (2) that the trial court appointed ineffective counsel who failed to present his version of the facts to the jury.  See id. at *3.  The Kansas Court of Appeals found that these two claims appeared to restate sub-issues of his original claim and therefore related back.  See id. at *8.  Regarding the remaining proposed amended claims, the Kansas Court of Appeals found that they did not arise out of the same conduct or occurrence as the original claim and therefore did not relate back and were untimely.  Id. at *3-4.

[9]    Appointed counsel represented petitioner in the petition for review in the Kansas Supreme Court.

[10]    Specifically, petitioner asserted that the lower state courts erroneously engaged in "a narrow analysis of precise legal issues using only record facts" when they should have "liberally [construed] the well-pleaded facts in search of relief."  Id. at 2.  Petitioner asserted that the lower state courts "should have examined the petition/motion and determined whether the well-pleaded facts could, under any theory, supply a basis for legal relief if they were given a complete development at an evidentiary hearing."  Id. at 3.  Petitioner asserted that the lower courts' failure to apply a "well-pleaded facts" analysis precluded him from presenting the merits of his ineffective assistance of counsel claim.  Id. at 6-7.

[11]    Regarding the merits of his ineffective assistance claim, petitioner asserted that because he claimed that counsel did not present "his complete defense," he sufficiently pleaded prejudice.  Appellant's Petition For Review at 7, Case No. 13-109,880-S.  Petitioner asserted that the "natural inference is that 'his' defense would've proved his innocence (as he suggests) and changed the result of the proceeding."  Id.  Petitioner asserted that "at best," the record was "ambiguous" as to what defense he proposed to counsel, why counsel rejected the proposed defense and the effect that it had on trial.  Id.

asserted that in light of his factual allegations, the lower courts erred in finding that the motion, files and records of the case conclusively showed that he was entitled to no relief. Id. at 8.

On August 4, 2015, the Kansas Supreme Court denied the petition for review.

On September 2, 2015, petitioner filed in this Court a petition seeking habeas corpus relief based on the following grounds: (1) appellate counsel failed to raise his Section 60-1507 claims on direct appeal (Ground 1), see Petition (Doc. #1) at 32-33; (2) in refusing to appoint substitute counsel, the trial court failed to conduct a proper inquiry into the details and nature of counsel's conflicts of interest and the conflict between petitioner and counsel (Ground 2), see id. at 34-37; (3) during a hearing on a motion to dismiss, the trial court refused to hear evidence regarding police bad faith and key impeachment witnesses (Ground 3), see id. at 38-41; (4) in forcing petitioner to rely solely on evidence presented by counsel, the trial court obstructed his ability to introduce exculpatory evidence (Ground 4), see id. at 42-43; (5) in not appointing substitute counsel, the trial court imposed ineffective and biased counsel who did not present petitioner's version of the facts, including his complete defense of actual innocence (Ground 5), see id. at 44-46; (6) in appointing ineffective and biased counsel who refused to investigate the case and present petitioner's version of the facts, the trial court effectively forced petitioner to testify in the first trial in violation his Fifth Amendment right to not testify (Ground 6), see id. at 47-51; (7) in representing petitioner under known conflicts of interest, trial counsel was ineffective (Ground 7), see id. at 52-54; (8) in not objecting to the prosecutor's use of perjured testimony, trial counsel was ineffective (Ground 8), see id. at 55-56; (9) in not objecting to improper bolstering of state witnesses, trial counsel was ineffective (Ground 9), see id. at 57-58; (10) new facts demonstrate actual innocence (Ground 10), see id. at 59-66; (11) the cumulative effect of trial errors caused substantial prejudice and denied him

-7-

a fair trial (Ground 11), see id. at 67; and (12) the state courts failed to provide a full and fair hearing

to argue the merits of his Section 60-1507 claims (Ground 12), see id. at 68-69.

### Standards For Habeas Petitions Under 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in relevant part at

28 U.S.C. § 2254, governs the Court's review.  Under Section 2254, the Court may not issue a writ

of habeas corpus with respect to any claim that the state court adjudicated on the merits unless that

adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1), (2); see Charlton v. Franklin, 503 F.3d 1112, 1114-15 (10th Cir. 2007).

Under the "contrary to" clause, the Court may issue a writ of habeas corpus only if (1) the

state court arrived at a conclusion opposite to that reached by the United States Supreme Court on

a question of law or (2) the state court decided the case differently than the  United States Supreme

Court on a set of materially indistinguishable facts.  Gipson v. Jordan, 376 F.3d 1193, 1196 (10th

Cir. 2004).  Under the "unreasonable application" clause, the Court may grant habeas relief if the

state court  correctly identified the governing legal rule but applied it unreasonably to the facts of

petitioner's case.  Williams v. Taylor, 529 U.S. 362, 407-08 (2000).  The Court may not issue a writ

simply because it concludes in its independent judgment that the state court applied clearly

established federal law erroneously or incorrectly; rather, the application must have been objectively

unreasonable.  See id. at 409-11.

The Court presumes that the state court factual determinations are correct.  Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003). Petitioner bears the burden of rebutting this presumption with clear and convincing evidence.  Id.  This presumption does not extend to legal determinations or to mixed questions of law and fact.  Id.  That is, if the state court employed the wrong legal standard in deciding the merits of the federal issue, the deferential standard of review does not apply.  Id. (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)).  Ultimately, the Court's review of the state court proceedings is quite limited, as Section 2254(d) sets forth a highly deferential standard for evaluating state court rulings.  Frost v. Pryor, 749 F.3d 1212, 1222 (10th Cir. 2014).

A state prisoner may not obtain federal habeas relief unless he "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  The Tenth Circuit recently explained the doctrine of procedural default in detail.  See Griffin v. Scnurr, 640 F. App'x 710, 716-17 (10th Cir. 2016).  Four aspects of the exhaustion requirement contribute to the doctrine of procedural default.  Id. at 716.  First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  Id.  To do so, the prisoner must seek discretionary review of the constitutional issues he wishes to pursue in the state's highest court – here, the Kansas Supreme Court.  Id.  Second, the prisoner must "fairly present" his claim in each appropriate state court, thus alerting that court to the federal nature of the claim.  Id. (prisoner must present "substance" of claim to state courts to put courts on notice of federal constitutional claim); see Prendergast v. Clements, 699 F.3d 1182, 1184 (10th Cir. 2012).  Third, procedural default may arise from anticipatory procedural bar.  Generally, a federal court should dismiss unexhausted claims without prejudice so

that the petitioner can pursue available state-court remedies.  But if the court to which petitioner must present his claims to meet the exhaustion requirement would now find those claims procedurally barred, "there is a procedural default for the purposes of federal habeas review." Griffin, 640 F. App'x at 716.  Fourth, federal courts do not address issues that petitioner defaulted in state court on an independent and adequate state procedural ground, unless petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." Id. at 717 (citing Cummings v. Sirmons, 506 F.3d 1211, 1224 (10th Cir. 2007)).

### Analysis

As noted, petitioner seeks habeas corpus relief based on 12 grounds.  Respondent asserts that petitioner has procedurally defaulted all claims.[12]  See Answer And Return (Doc. #9) filed June 8, 2017 at 10-11.

**I.    Exhaustion And Procedural Default**

As noted, a state prisoner may not obtain federal habeas relief unless he has exhausted the remedies available in state courts.  28 U.S.C. § 2254(b)(1)(A).  To do so, the prisoner must seek discretionary review of the constitutional issues that he wishes to pursue in the state's highest court – here, the Kansas Supreme Court.  See Griffin, 640 F. App'x at 716-17.  The prisoner must "fairly present" his claim in each appropriate state court, thus alerting the state court to the federal nature

---

[12]    Except for a claim that the district court erred in excluding evidence to whether police had found a gun, respondent asserts that petitioner has failed to exhaust state remedies.  See Answer And Return (Doc. #9) at 10-11.  Although petitioner raised this issue on direct appeal to the Kansas Supreme Court, he does not appear to assert the claim in this case.  Respondent contends that petitioner raises the issue in Ground 4.  See id.  In Ground 4, however, petitioner asserts that the trial court forced him to rely on evidence presented by counsel when it knew that he disagreed and wanted to proffer additional evidence, see Petition (Doc. #1) at 42-43.

of his claim. Id. (prisoner must present "substance" of claim to state courts so as to put courts on notice of federal constitutional claim); see Prendergast, 699 F.3d at 1184.

Where petitioner has failed to exhaust a claim in state court and state court remedies are no longer available when he applies for federal habeas relief, petitioner meets the technical requirements for exhaustion, i.e. no state remedies are available to him. See Coleman v. Thompson, 501 U.S. 722, 732 (1991), qualified on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012); Walker v. Heimgartner (Heimgartner I") No. 15-3230-DDC, 2017 WL 1197645, at *5 (D. Kan. Mar. 31, 2017); Bowles v. Kansas, No. 15-3049-JTM, 2016 WL 3759508, at *1 (D. Kan. July 14, 2016). In this circumstance, the claim is subject to dismissal under the doctrine of procedural default. Bowles, 2016 WL 3759508, at *1; see also Coleman, 501 U.S. at 750. Procedural default occurs primarily in one of two ways: (1) when a state court clearly dismisses an issue on a state procedural ground that is independent of federal law and adequate to support the judgment; or (2) when petitioner fails to exhaust available state remedies and would be procedurally barred from now presenting the issue in state court. See Heimgartner I, 2017 WL 1197645, at *5; Bowles, 2016 WL 3759508, at *2. Federal courts may not review claims that have been procedurally defaulted in state court unless petitioner can demonstrate (1) cause and prejudice for the default or (2) that failure to consider the claims will result in a fundamental miscarriage of justice because petitioner has made a credible showing of actual innocence. Coleman, 501 U.S. at 750; Frost v. Pryor, 749 F.3d 1212, 1231 (10th Cir. 2014); Heimgartner I, 2017 WL 1197645, at *5.

Here, the record shows that petitioner has procedurally defaulted some of his claims. Of the 12 claims that he asserts in this case, the Kansas Court of Appeals found that seven claims were time-barred and did not relate back to his original Section 60-1507 motion. See Cosby, 2014 WL

4435848, at *1-3.  Specifically, the Kansas Court of Appeals found that the following claims were untimely and need not be addressed: (1) during a hearing on a motion to dismiss, the trial court refused to hear evidence regarding police bad faith and key impeachment witnesses (Ground 3), see Petition (Doc. #1) at 32-33; (2) in forcing him to rely solely on evidence presented by counsel, the trial court obstructed his ability to introduce exculpatory evidence (Ground 4), see id. at 42-43; (3) in defending him under known conflicts of interest, trial counsel was ineffective (Ground 7), see id. at 52-54; (4) in not objecting to the prosecutor's use of perjured testimony, trial counsel was ineffective (Ground 8), see id. at 55-56; (5) in not objecting to the prosecutor's improper bolstering of state witnesses, trial counsel was ineffective (Ground 9), see id. at 57-58; (6) new facts demonstrate actual innocence (Ground 10), see id. at 59-66; and (7) the cumulative effect of trial errors caused substantial prejudice and denied him a fair trial (Ground 11), see id. at 67.  See Cosby, 2014 WL 4435848, at *1-3.  In his petition for review in the Kansas Supreme Court, petitioner did not challenge the Kansas Court of Appeals ruling that these claims were time-barred.  See Appellant's Petition For Review, Case No. 13-109,880-S.[13]  Because petitioner did not seek review in the Kansas Supreme Court, he has not exhausted state remedies as to those claims.  See, e.g., Gonzales v. McKune, 279 F.3d 922, 924 (10th Cir. 2002) (claims not included in petition for discretionary review to state highest court not exhausted and procedurally defaulted when time-barred).  Moreover, it is too late for petitioner to now seek review in the Kansas Supreme Court.

---

[13]    As noted, in his petition for review in the Kansas Supreme Court, petitioner challenged only whether the lower state courts applied the correct standard of review in deciding the merits of his claims.  More specifically, petitioner asserted that the lower state courts should have liberally construed his well-pleaded factual allegations to determine whether under any theory, they could supply a basis for legal relief if given "complete development at an evidentiary hearing." Appellant's Petition For Review, Case No. 13-109,880-S at 2-3.

<u>See, e.g.</u>, <u>Griffin</u>, 640 Fed. App'x at 719.  Accordingly, unless petitioner can show cause and prejudice or a fundamental miscarriage of justice, the claims are procedurally barred.  <u>See id.</u>; <u>Walker v. Kansas</u>, No. 101,431, 2012 WL 686685, at *5 (Kan. App. Feb. 17, 2012).

Petitioner asks the Court to "decline" respondent's argument that he has not exhausted state remedies and "mercifully" rule on the merits of his claims.  <u>Traverse To Answer And Return</u> (Doc. #13) filed July 5, 2016.  He provides no grounds, however, to support a claim that his procedural default is excused by adequate cause and prejudice or a fundamental miscarriage of justice.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750.  To satisfy the "cause" requirement, petitioner must show that an external factor prevented him from properly raising the claims in his petition for review to the Kansas Supreme Court.  <u>See</u> <u>Coleman</u>, 501 U.S. at 753.  Petitioner has not alleged or demonstrated that any external factor caused his failure to properly present the claims in the highest state court.[14]  Accordingly, petitioner has not shown adequate cause to except his claims from

---

[14]    Petitioner does not assert that in the post-conviction proceedings, appellate counsel was ineffective in failing to include the claims in his petition for review in the Kansas Supreme Court. Regardless, such an allegation would not provide sufficient grounds to excuse his procedural default.  <u>See</u> 28 U.S.C. § 2254(i) (ineffectiveness or incompetent counsel during federal or state post-conviction proceedings not ground for relief in Section 2254 proceeding); <u>Walker v. Heimgartner</u> ("<u>Heimgartner II</u>") 2017 WL 2591526, at *2 (D. Kan. June 15, 2017).

In <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), the United States Supreme Court held that where state law does not allow ineffective-assistance-of-trial-counsel claims to be raised on direct appeal, ineffective assistance or lack of counsel *in the initial-review collateral proceeding* may supply sufficient "cause" to excuse procedural default as to claims of ineffective assistance of trial counsel. <u>Id.</u> at 9-17.  In <u>Trevino v. Thaler</u>, 569 U.S. 413 (2013), the United States Supreme Court extended <u>Martinez</u> to circumstances where obstacles created by state law made it "virtually impossible" to assert ineffectiveness claims on direct appeal. <u>Id.</u> at 417.  It appears that the Tenth Circuit has not addressed whether <u>Trevino</u> applies to cases arising under Kansas law.  In <u>Harms v. Cline</u>, 27 F. Supp.3d 1173 (D. Kan. 2014), Judge Crow found that under <u>Martinez</u> and <u>Trevino</u>, a petitioner seeking relief under Kansas law may establish cause if he can show that his ineffective-assistance-of-trial-counsel claim is "substantial," <u>i.e.</u> that the claim has "some merit."  <u>Id.</u> at 1186.

(continued...)

procedural default.

Moreover, petitioner has not shown that failure to consider the claims will result in a fundamental miscarriage of justice. To satisfy this exception, petitioner must make a credible showing of actual innocence, i.e. he must support his allegations of constitutional error with new reliable evidence which, if admitted, would have made it more likely than not that the jury would have acquitted him. See Cummings, 506 F.3d at 1224. Petitioner has failed to present any such evidence and thus cannot establish a claim of actual innocence. See, e.g., Shumpert v. Winn, No. 16-11565, 2017 WL 1151103, at *3 (E.D. Mich. Mar. 28, 2017) (petitioner's self-serving claim of innocence does not constitute new evidence to support actual innocence claim); Patterson v. Webb, No. DKC-12-3111, 2015 WL 2375399, at *6 (D. Md. May 18, 2015) (petitioner's statements insufficient evidence of actual innocence); Herrera v. Gipson, No. 12-94-57-JAK (DTB), 2013 WL

---

[14](...continued)

As noted, petitioner asserts that trial counsel was ineffective in (1) defending him under known conflicts of interest; (2) not objecting to perjured testimony; and (3) not objecting to improper bolstering of state witnesses. See Petition (Doc. #1) at 52-58 (Grounds 7, 8 and 9). In the initial-review collateral proceeding, petitioner represented himself and failed to timely raise these claims. Petitioner does not assert lack of counsel as a reason for his failure to timely raise these claims. Even if he did, he has not shown that the claims have merit. To show ineffective assistance of trial counsel, petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance resulted in prejudice to his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). As discussed infra, with respect to trial counsel's alleged conflicts of interest, petitioner has not shown that he suffered prejudice as a result. As to trial counsel's alleged failure to object to perjured testimony and improper bolstering of state witnesses, petitioner has not shown that counsel's performance was deficient or that he suffered prejudice as a result. Petitioner asserts that two state witnesses committed perjury and that the prosecutor improperly bolstered the credibility of state witnesses. See Petition (Doc. #1) at 55-58. Other than his own speculative and self-serving statements, petitioner provides no support for the assertions. Morever, the record does not disclose whether trial counsel strategically chose not to object or was simply negligent, or that petitioner suffered prejudice as a result. See, e.g., Jones v. Pryor, No. 12-3055-JAR, 2017 WL 2461474, at *7 (D. Kan. June 7, 2017).

2394972, at *7 (C.D. Calif. May 31, 2013).[15]

Based on the foregoing analysis, the Court finds that following claims are procedurally barred from federal habeas review: (1) during a hearing on a motion to dismiss, the trial court refused to hear evidence regarding police bad faith and key impeachment witnesses (Ground 3), see Petition (Doc. #1) at 32-33; (2) in forcing him to rely solely on evidence presented by counsel, the trial court obstructed his ability to introduce exculpatory evidence (Ground 4), see id. at 42-43; (3) in defending him under known conflicts of interest, trial counsel was ineffective (Ground 7), see id. at 52-54; (4) in not objecting to the prosecutor's use of perjured testimony, trial counsel was ineffective (Ground 8), see id. at 55-56; (5) in not objecting to the prosecutor's improper bolstering of credibility of state witnesses, trial counsel was ineffective (Ground 9), see id. at 57-58; (6) new facts demonstrate actual innocence (Ground 10), see id. at 59-66; and (7) the cumulative effect of trial errors caused substantial prejudice and denied him a fair trial (Ground 11), see id. at 67.

---

[15]        Petitioner asserts that Exhibit A1F1 contains "the most critical facts" that demonstrate his actual innocence. Petition (Doc. #1) at 53. Exhibit A1F1 asserts that at the time of the shooting, Martin posed "a serious threat of imminent danger" which justified deadly force to defend petitioner's dwelling and the lives of his friends therein.  Exhibit A1F1 (Doc. #2) filed September 4, 2015 at 2.  Specifically, petitioner asserts the following: (1) Martin harbored a personal and murderous vendetta against petitioner for the death of his close friend and gang leader, David Walker; (2) Martin also had "bad blood" with petitioner's best friend, Alan Johnson; (3) Johnson had received recent death threats due to a hostile altercation with Martin's associate; (4) on the night of the shooting, Martin conspired with Chad Davis and Andrea Garrison to infiltrate petitioner's residence, armed and heavily under the influence of drugs; (5) immediately before the shooting, Martin covertly manipulated a firearm inside his brown leather jacket;  (6) forensic evidence would provide "indisputable proof" that at the time of the shooting, no one else was paying attention to what Martin was doing; (7) following the shooting, Davis, Garrison and Lawrence police officers altered, manipulated and destroyed evidence at the crime scene to eradicate any appearance of threat posed by Martin; (8) Lawrence police had an "outrageous and highly inappropriate relationship" with Martin; (9) Davis and Garrison withheld evidence and offered perjured statements to conceal their conspiracy with Martin; and (10) Martin was one of the "most notorious and dangerous malefactors" that Lawrence has ever known. Id. at 4-14.  Aside from these conclusory, self-serving statements, petitioner provides no evidence to support his assertions.

The following claims remain: (1) in failing to raise petitioner's Section 60-1507 claims on direct appeal, appellate counsel was ineffective, see Petition (Doc. #1) at 32-33 (Ground 1); (2) in refusing to appoint substitute counsel, the trial court imposed ineffective and biased counsel and failed to conduct a proper inquiry into the details and nature of the attorney-client conflict and counsel's conflicts of interest, see id. at 34-37, 44-46, 47-51 (Grounds 2, 5 and 6); and (3) the state courts failed to provide a full and fair hearing to argue the merits of petitioner's claims, see id. at 68-69 (Ground 12).  The Court addresses the merits of these claims below.  See, e.g., Heimgartner II, 2017 WL 2591526, at *2 (citing Harris v. Champion, 48 F.3d 1127, 1131 n.3 (10th Cir. 1995)) (court may deem unexhausted claims procedurally barred and address merits of properly exhausted claims).

**II.     Ineffective Appellate Counsel – Ground 1**

Petitioner asserts that in not raising all of his Section 60-1507 claims on direct appeal, appellate counsel was ineffective.  See Petition (Doc. #1) at 32-33.[16]  Specifically, petitioner asserts that (1) after his first trial, petitioner told appellate counsel that due to unconstitutional conduct by trial counsel and the trial judge, his exculpatory defense was not presented to the jury, id. at 32; (2) appellate counsel told petitioner that his complaints were primarily based on ineffective assistance of trial counsel, which he could not raise on direct appeal, id.; (3) appellate counsel worked diligently on petitioner's behalf and secured a new trial, id. at 33; (4) during the second trial, trial counsel and the trial judge again engaged in unconstitutional conduct, id.; (5) on direct appeal,

---

[16]     Petitioner asserts that appellate counsel failed to raise Grounds 1 through 9 and Ground 11.  See Petition (Doc. #1) at 7-25.  Petitioner asserts that appellate counsel did raise Ground 10 (new facts demonstrate actual innocence).  See id. at 23.  Petitioner asserts that whether appellate counsel raised Ground 12 (state courts failed to provide hearing) is "not applicable."  Id. at 26.

-16-

appellate counsel chose not to raise the constitutional claims, id.; and (6) during post-conviction proceedings, the Kansas Court of Appeals acknowledged that petitioner could have raised his Section 60-1507 claims on direct appeal, id.

To show ineffective assistance of appellate counsel, petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance resulted in prejudice to his defense. Strickland, 466 U.S. at 687-88; accord Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010). Here, even if petitioner could show that appellate counsel's performance was deficient, he alleges no facts to show that he suffered prejudice as result thereof. On appeal in the Section 60-1507 proceedings, the State argued that petitioner's claim of failure to appoint new trial counsel was procedurally barred because he did not raise the issue on direct appeal. See Cosby, 2014 WL 4435848, at *4. The Kansas Court of Appeals disagreed. It found that because petitioner alleged that appellate counsel was ineffective in failing to raise the issue, it would consider the merits of his claim. See id.[17] Because the Kansas Court of Appeals considered the merits of petitioner's claim, even if appellate counsel was deficient in not raising the issue on direct appeal, petitioner suffered no prejudice. Petitioner presents no evidence of prejudice as a result of ineffective assistance of appellate counsel. Accordingly, petitioner is not entitled to relief on this ground.

---

[17]     Pursuant to Kansas Supreme Court Rule 183(c)(3), "[m]ere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised [in a Section 60-1507 proceeding] even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal." Kan. Sup. Ct. R. 183(c)(3). The Kansas Court of Appeals found that because ineffective assistance of appellate counsel can rise to the level of exceptional circumstances required to excuse the failure to appeal under Rule 183, it would consider the merits of petitioner's timely Section 60-1507 claims even though he did raise them on direct appeal. See Cosby, 2014 WL 4435848, at *5.

III.    **Substitute Counsel – Grounds 2, 5, 6**

In Grounds 2, 5 and 6, petitioner asserts that in refusing to appoint substitute trial counsel, the trial court violated his constitutional rights. In support of the claims, petitioner asserts lengthy and overlapping allegations. See Petition (Doc. #1) at 34-36 (Ground 2), 44-46 (Ground 5), 50-51 (Ground 6).[18] Essentially, he asserts that the trial court should have appointed substitute counsel

---

[18]    In Ground 2, petitioner asserts that the trial court dismissed his requests for new counsel without conducting a proper inquiry. See Petition (Doc. #1) at 34. Petitioner asserts that trial counsel had a conflict of interest because counsel (1) was a former Lawrence police officer and close friend of leading detectives on the case and (2) stated that he was not getting paid enough to represent petitioner in the criminal case. See id. at 34-35. Petitioner asserts that due to conflicts of interest, trial counsel sought to suppress facts which demonstrated bad faith and official misconduct by Lawrence police. See id. at 36. Petitioner asserts that he "vigorously" sought to inform the trial judge of counsel's unconstitutional conduct, but the trial court dismissed his requests for substitute counsel without conducting any meaningful investigation into the details and nature of the attorney-client conflict. Id.

In Ground 5, petitioner asserts that the trial court appointed ineffective counsel who stated that he was not getting paid enough to represent petitioner. See Petition (Doc. #1) at 44. Petitioner asserts that (1) trial counsel "sternly expressed" that he was not getting paid enough to fight the criminal charges against petitioner, id.; (2) three times in the first trial, petitioner informed the court that trial counsel was not investigating the most critical aspects of his case, id.; (3) because the trial court disregarded petitioner's grievances, the jury in the first trial did not hear petitioner's complete version of facts, id.; (4) after the Kansas Supreme Court remanded the case for a new trial, at his first appearance before the trial court, petitioner immediately moved to substitute counsel, id.; (5) trial counsel met with petitioner and told him that the court would not appoint new counsel unless petitioner could show that counsel's performance in the second trial was ineffective, id. at 45; (6) petitioner had no new grounds for ineffective assistance of counsel in the second trial, which had not yet occurred, so he was again forced to work with counsel until he could clearly establish his ineffectiveness in the second trial proceedings, id.; (7) in the second trial, the court barred petitioner from presenting his complete version of the facts, id.; and (8) the trial court imposed ineffective counsel whom it knew was under a conflict of monetary interest, id. at 46.

In Ground 6, petitioner asserts that due to counsel's "conflict of both monetary and camaraderie interests," counsel refused to investigate [petitioner's] version of events and made no effort to inform the jury of petitioner's side of the story. Petition (Doc. #1) at 50. Petitioner asserts that as a result, he was forced to challenge the State's evidence with only his own testimony. See id. Petitioner asserts that by imposing ineffective trial counsel, the trial court effectively forced him
(continued...)

-18-

because (1) counsel had personal conflicts of interest based on his relationship with Lawrence police and his belief that he was not getting paid enough money to represent petitioner and (2) the conflict between petitioner and counsel led to an irreparable breakdown in communications. Petitioner also asserts the trial court failed to conduct a proper inquiry into the details and nature of the attorney conflicts.

### A.    State Court Findings

In addressing the merits of petitioner's claims, the Kansas Court of Appeals found as follows: Petitioner and trial counsel had an "on-again-off-again" relationship. Cosby, 2014 WL 4435848, at *5. Before the first trial, petitioner wrote the court a letter requesting substitute counsel. See id. Petitioner complained that counsel was mishandling the case, was not communicating and lacked sufficient knowledge to defend him. See id. The trial court determined that the difference of opinion was not sufficiently severe to require substitute counsel. See id. At a later hearing, counsel informed the court that he and petitioner had repaired their relationship. See id. Petitioner did not object. See id. The record reveals no further issue regarding counsel during the first trial. See id.

After the Kansas Supreme Court remanded the case for a second trial, the trial court appointed the same attorney to represent petitioner. See id. at *6. Petitioner did not write a letter

_____

[18](...continued)
to testify on his own behalf in the first trial in violation of his rights under the Fifth Amendment. Petitioner asserts that he told counsel that if counsel refused to investigate and prepare an evidentiary presentation in support of petitioner's testimony, then petitioner "would be forced to forfeit his right to testify and rely solely on defense counsel" to explain petitioner's version of the facts to the jury. Id. at 51. Petitioner asserts that this decision "created a major conflict which ultimately led to an irreparable breakdown of communication" between petitioner and his attorney. Id.

or other correspondence suggesting that he did not want counsel to represent him.  See id.  During

the first status conference, counsel noted that petitioner might want another attorney and asked for

an opportunity to talk with petitioner.  See id.  The trial court agreed and continued the hearing.  See

id.  Subsequently, counsel informed the court that he and petitioner had reconciled their differences

and intended to proceed to trial.  See id.  Petitioner agreed.  See id.  Later, at a motion hearing on

the eve of the second trial, petitioner complained about counsel.  See id.  Petitioner asserted that

counsel (1) did not understand the motion to dismiss well enough to explain it; (2) was asserting

counsel's personal theory rather than petitioner's theory of defense; and (3) disregarded facts that

petitioner thought were pertinent to the defense.  See id.  Petitioner stated that he and counsel did

not communicate well regarding trial strategy.  See id.  Petitioner asserted that counsel may have

been influenced by his relationship with law enforcement.  See id.  Counsel stated that he was taken

off guard by petitioner's comments because he thought that they had agreed on trial strategy.  See

id.  Counsel asserted that his background as a police officer did not prevent him from representing

petitioner properly.  See id.  The trial court considered petitioner's comments but determined that

counsel was representing him well.  See id.  The trial court noted that counsel had raised some of

the issues that petitioner claimed he had disregarded.  See id.  The trial court found no reason to

require counsel to withdraw.  See id.

Applying Kansas law, the Kansas Court of Appeals found as follows.  To obtain substitute

counsel, a criminal defendant must show "justifiable dissatisfaction" with appointed counsel.  Id.

(citing State v. Jasper, 269 Kan. 649, Syl. ¶ 1, 8 P.3d 708 (2000)).  Examples of justifiable

dissatisfaction include a conflict of interest, irreconcilable conflict or complete breakdown in

communications between counsel and defendant.  Id.  So long as the trial court has a reasonable

basis to believe that the attorney-client relationship has not deteriorated to a point where counsel can no longer give effective aid in the fair presentation of a defense, it need not appoint new counsel. Id. (citing State v. Bryant, 285 Kan. 970, 972, Syl. ¶ 14, 179 P.3d 1122, 1125-26 (2008)). Regarding petitioner's claims of conflict of interest, bias or breakdown in communication, the trial court found no merit. Id. at *7. Indeed, the trial court found that counsel "was doing a fine job" and raising the issues that petitioner wanted raised. Id. Petitioner offered no information that called into question the trial court conclusions. See id. Petitioner relied only on conclusory and generic assertions and had "never specified exactly what it is [that counsel] should have done or the defenses he failed to develop." The Kansas Court of Appeals concluded that petitioner did not show a breakdown in communication or other issue that required substitute counsel. See id. at *8. Based on these findings, the Kansas Court of Appeals affirmed the state district court order denying relief under Section 60-1507. See id.

**B.      Federal Law**

As noted, to obtain federal habeas corpus relief under Section 2254, petitioner must show that the state court holding was contrary to or an unreasonable application of firmly established United States Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. 2254(d)(1), (2). As set forth below, petitioner has not come close to meeting this high burden.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to assistance of counsel for his or her defense. U.S. Const. Amend. VI.[19] This right is designed

---

[19]      The Sixth Amendment states, in part, as follows:

(continued...)

to assure fairness in the adversary criminal process.  See United States v. Morrison, 449 U.S. 361,

364 (1981).  Because an unaided layman may have little skill arguing the law or coping with an

intricate procedural system, "the Sixth Amendment secures the right to the assistance of counsel,

by appointment if necessary, in a trial for any serious crime." Wheat v. United States, 486 U.S. 153,

158-59 (1988) (citing Gideon v. Wainwright, 372 U.S. 335 (1963)).  In evaluating claims under the

Sixth Amendment, the Court focuses on "fairness of the adversarial process, not on the accused's

relationship with his lawyer as such." Wheat, 486 U.S. at 159 (quoting United States v. Cronic,

466 U.S. 648, 657 n.21 (1984)).  The essential aim of the Sixth Amendment is to guarantee an

effective advocate for each criminal defendant, not to ensure that "a defendant will inexorably be

represented by the lawyer whom he prefers." Wheat, 486 U.S. at 159.  In other words, the Sixth

Amendment protects a criminal defendant's right to adequate counsel.  See Caplin & Drysdale,

Chtd. v. United States, 491 U.S. 617, 624 (1989); Chambers v. Maroney, 399 U.S. 42, 54 (1970).

It does not guarantee a "meaningful relationship" between an accused and his attorney.  Morris v.

Slappy, 461 U.S. 1, 14 (1983).  To warrant substitution of counsel, defendant must present "good

cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable

conflict which leads to an apparently unjust verdict." United States v. Hutchinson, 573 F.3d 1011,

1024 (10th Cir. 2009) (quoting United States v. Beers, 189 F.3d 1297, 1302 (10th Cir. 1999)).  In

---

[19](...continued)
In all criminal prosecutions, the accused shall enjoy the right . . . to have the
Assistance of Counsel for his defence.

U.S. Const. Amend. VI.

deciding whether to appoint substitute counsel, the trial court exercises considerable discretion. Hutchinson, 573 F.3d at 1024.[20]

### 1.    Conflict Of Interest

Petitioner asserts that trial counsel had personal conflicts of interest which adversely affected his performance in the case. Specifically, petitioner asserts that trial counsel had conflicts of interest because he (1) was a former Lawrence police officer and close friend of leading detectives on the case and (2) stated that he was not getting paid enough money to represent petitioner in his criminal case. Petitioner asserts that because of these conflicts, counsel did not investigate the case, pursue claims of police misconduct or present petitioner's version of facts to the jury.

---

[20]    In Hutchinson, the Tenth Circuit described the trial court's discretion as follows:

By definition, questions committed to a [trial] court's discretion call on the [trial] court to exercise some degree of judgment and "render a decision based upon what is fair in the circumstances and guided by the rules and principles of law." Shook v. Bd. of County Comm'rs, 543 F.3d 597, 603 (10th Cir. 2008) (citation and alteration omitted). Such decisions often involve consideration of "incommensurate and disparate considerations," United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007), so "there will not necessarily be a single right answer, but a range of possible outcomes the facts and law at issue can fairly support," Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't, 533 F.3d 1183, 1186 (10th Cir. 2008). In light of the fact that there may be more than one reasonable resolution to a matter committed to the [trial] court's discretion, appellate judges do not simply substitute [their] judgment for the [trial] judge's but ask instead whether the [trial] court's chosen course qualifies as one of those "rationally available choices given the facts and the applicable law in the case at hand." Shook, 543 F.3d at 603. It is only when the [trial] court's decision is legally erroneous, or when the facts are so lopsided against the option the [trial] court has chosen . . . that [the appellate court reverses the trial court decision].

Hutchinson, 573 F.3d at 1024.

The Sixth Amendment guarantee of the right to counsel "includes the right to representation that is free from conflicts of interest." Gardner v. Galetka, 568 F.3d 862, 886 (10th Cir. 2009). A conflict of interest is "a division of loyalties that affected counsel's performance." Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002). Demonstrating a conflict of interest is one way for a defendant to show good cause to warrant substitute counsel. See United States v. Porter, 405 F.3d 1136, 1140 (10th Cir. 2005).

As a general rule, a defendant alleging a Sixth Amendment violation must demonstrate prejudice, i.e. he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mickens, 535 U.S. at 166 (quoting Strickland, 466 U.S. at 694). An exception exists in cases where the assistance of counsel has been denied entirely or during a critical stage of the proceeding. See Mickens, 535 U.S. at 166. In "circumstances of that magnitude," the United States Supreme Court has found that the likelihood of an unreliable verdict is so high that a case-by-case inquiry is unnecessary. Id. (quoting Cronic, 466 U.S. at 659 n.26 (1984)). In such cases, courts presume prejudice, i.e. a defendant need not show prejudice to obtain relief. See id. Cases involving "circumstances of that magnitude" may arise when defendant's attorney actively represented conflicting interests, i.e. in cases involving multiple representation. Mickens, 535 U.S. at 166. In multiple-representation cases, where a trial court improperly requires joint representation over a timely objection, reversal is automatic. See Mickens, 535 U.S. at 168 (citing Holloway v. Arkansas, 435 U.S. 475, 488 (1978)).[21]

---

[21]    Absent a timely objection, to obtain relief based on multiple representation, a defendant must demonstrate that the conflict "actually affected the adequacy of his representation." Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980). Under Sullivan, i.e. in cases involving no
(continued...)

Here, petitioner does not allege a multiple-representation conflict. As noted, petitioner asserts that trial counsel had personal conflicts of interest, i.e. that he had a close relationship with Lawrence police and did not believe that he was getting paid enough money to represent petitioner in his criminal case. In cases involving attorney conflicts outside the multiple-representation context, the standard established in Strickland v. Washington, 466 U.S. 668, 694 (1984), constitutes firmly established United States Supreme Court precedent.[22] See Mickens, 535 U.S. at 166-67, 174-76; Williamson, 859 F.3d at 853-56. Thus, to establish constitutional error, petitioner must show that counsel's performance was deficient and resulted in prejudice such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see Williamson, 859 F.3d at 856.

As noted, the Kansas Court of Appeals agreed with the trial court finding that petitioner's conflict of interest claims were without merit and that counsel did a "a fine job" representing petitioner. Cosby, 2014 WL 4435848, at *7. The Kansas Court of Appeals found that petitioner had offered no new information that called into question the trial court conclusions. See id. It noted that

---

[21](...continued)

objection to multiple representation, to obtain reversal a defendant must show that the conflict "actually affected the adequacy of his representation" but need not show prejudice. Mickens, 535 U.S. at 171 (quoting Sullivan, 446 U.S. at 349-50) (emphasis omitted). In other words, under Sullivan, once defendant shows an effect on representation, prejudice is presumed. See Mickens, 535 U.S. at 173.

[22]    The United States Supreme Court has not decided whether outside the multiple-representation context, a defendant can obtain relief without showing prejudice. See Mickens, 535 U.S. at 174-75 (language of Sullivan does not clearly establish or even support that adverse-effect standard applies to other types of attorney conflicts); United States v. Williamson, 859 F.3d 843, 852 (10th Cir. 2017) (United States Supreme Court has applied "presumed prejudice" rule only for conflicts in multiple representation cases).

petitioner relied only on conclusory and generic assertions and had "never specified exactly what it is [that counsel] should have done or the defenses he failed to develop."  Id.

The Kansas Court of Appeals decision was not contrary to or an unreasonable application of United States Supreme Court law.  Moreover, this Court's review of the record indicates that in light of the evidence presented, the Kansas Court of Appeals decision is not based on an unreasonable determination of the facts.  Petitioner asserts that due to conflicts in interest, counsel refused to (1) emphasize facts which demonstrated bad faith and misconduct by Lawrence police; (2) investigate the case; and (3) present petitioner's version of facts to the jury.  See Petition (Doc. #1) at 36, 44, 50.  Petitioner points to no evidence that counsel would have uncovered and/or presented to the jury absent the alleged conflicts.  In other words, petitioner has not shown that counsel's performance was deficient or that he suffered prejudice as a result thereof.  Petitioner is not entitled to relief on this ground.

### 2.    Breakdown In Communication

Petitioner asserts that trial counsel refused to investigate and present his version of facts to the jury, which led to an irreparable breakdown in communication.  See Petition (Doc. #1) at 50-51.  As noted, the Sixth Amendment protects a criminal defendant's right to adequate representation.  See Caplin & Drysdale, 491 U.S. at 624.  It does not guarantee a "meaningful relationship" between an accused and his attorney.  Morris, 461 U.S. at 14.  Substitution of counsel is warranted if defendant shows good cause such as "a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict."  United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987).  To prove a total breakdown in communication, defendant must present evidence of a severe and pervasive conflict with his attorney or evidence that he had such

minimal contact with counsel that meaningful communication was impossible.  See United States
v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002).  A mere disagreement about trial strategy does not
constitute good cause to substitute counsel.  See id.

The Kansas Court of Appeals found that petitioner did not show a breakdown in
communication that required substitute counsel.  Cosby, 2014 WL 4435848, at *8.  It found that
petitioner had an "on-again-off-again" relationship with trial counsel and did not produce any
information which called into question the trial court findings that counsel represented petitioner
well.  Id. at *5-7.  The Kansas Court of Appeals decision was not contrary to or an unreasonable
application of United States Supreme Court law and in light of the evidence presented, is not based
on an unreasonable determination of the facts.  The record indicates that petitioner's complaints
regarding counsel involve disagreements about trial strategy, not a complete breakdown in
communications.  Petitioner is not entitled to relief on this ground.

### 3.    Duty To Inquire Into Details And Nature Of Attorney-Client Conflict

Petitioner asserts that the trial court failed to conduct a proper inquiry into the details and
nature of the attorney-client conflict.  Specifically, petitioner asserts that he "vigorously" sought to
inform the trial judge of counsel's unconstitutional conduct, but the trial court dismissed his requests
for substitute counsel without conducting any meaningful investigation into the details and nature
of the attorney-client conflict.  See Petition (Doc. #1) at 36 (Ground 2).

Under federal law as clearly established by United States Supreme Court, a trial court must
inquire into an attorney-client conflict when it knows or reasonably should know of an actual
conflict.  Mickens, 535 U.S. at 170-75; Sullivan, 446 U.S. at 346-47; Williamson, 859 F.3d at 852-
55.  An actual conflict of interest means a "conflict that affected counsel's performance – as opposed

to a mere theoretical division of loyalties." Williamson, 859 F.3d at 852 (quoting Mickens, 535 U.S. at 171) (emphasis omitted).  In multiple-representation cases, upon timely objection the duty to inquire is mandatory, i.e. absent an inquiry, prejudice is presumed and reversal is automatic.[23] See, e.g., Williamson, 859 F.3d at 852-55.  When the potential conflict does not involve multiple representation, a duty to inquire exists only if the trial court has a substantial basis to believe that an actual conflict exists.  See id.  In such cases, even if the court fails to inquire into an actual conflict, the automatic reversal rule does not apply.  See id. at 856.  Where, as here, petitioner points to "a mere theoretical division of loyalties," he cannot obtain habeas relief based solely on the trial court's alleged failure to make an adequate inquiry.  See Mickens, 535 U.S. at 173-74.

In cases involving attorney conflicts outside the multiple-representation context, the standard established in Strickland constitutes firmly established United States Supreme Court precedent.  See Mickens, 535 U.S. at 173-74 (noting open question whether Sullivan or Strickland standard applies to cases alleging attorney conflicts outside multiple representation context); see also Williamson, 859 F.3d at 856-57.[24]  Thus, to obtain habeas relief, petitioner must demonstrate prejudice, i.e. he must show a reasonable probability that absent an actual attorney conflict, the result of the

---

[23]    Absent a timely objection in a multiple-representation case, a defendant must demonstrate that the conflict "actually affected the adequacy of his representation."  Sullivan, 446 U.S. at 348-49 (1980).  Once defendant shows an effect on representation, prejudice is presumed.  See Mickens, 535 U.S. at 173; Sullivan, 446 U.S. at 349-50.

[24]    In Williamson, the Tenth Circuit did not decide whether in cases alleging attorney conflicts outside multiple representation context, the Sullivan or Strickland standard applies. 859 F.3d at 859.  It found that because defendant could not meet the lesser standard under Sullivan, the question of which standard applied was immaterial.  Id.

proceeding would have been different.  See Strickland, 466 U.S. at 694; see Williamson, 859 F.3d at 856.

　　　　As noted, the Kansas Court of Appeals found that the trial court considered petitioner's claims of attorney conflict but found that they were without merit and that counsel did a "a fine job" representing petitioner.  Cosby, 2014 WL 4435848, at *6-7.  This determination is not unreasonable in light of the evidence presented.  Moreover, the Kansas Court of Appeals noted that petitioner relied only on conclusory and generic assertions and "never specified exactly what it is [that counsel] should have done or the defenses he failed to develop."  Id.  In other words, the Kansas Court of Appeals found that petitioner had not shown that the alleged conflicts adversely affected counsel's performance or that he suffered prejudice as result thereof.  This decision was not contrary to or an unreasonable application of United States Supreme Court law.  Petitioner is not entitled to relief on this ground.[25]

## IV.　　Failure To Hold Hearing On Section 60-1507 Claims

　　　　Petitioner asserts that the state courts failed to provide a full and fair hearing to argue the merits of his Section 60-1507 claims.  See Petition (Doc. #1) at 68-69 (Ground 12).  This claim challenges the procedures of the state post-conviction remedy; it does not challenge the judgment which provides the basis for petitioner's incarceration.  See Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998).  As such, it fails to state a cognizable claim for federal habeas relief.  See id.;

---

　　　　　[25]　　Petitioner asserts that by inquiring into the attorney-client conflict in front of the prosecution, the trial court required him to disclose critical defense strategies and violate the attorney-client privilege.  See Petition (Doc. #1) at 36.  Petitioner points to no specific information which he was forced to divulge or how it may have prejudiced his defense.

<u>Manning v. Patton</u>, No. 13-CV-722-TCK-FHM, 2015 WL 4582215, at *16 (N.D. Okla. July 29, 2015); <u>Requena v. Roberts</u>, No. 07-3058-JWL, 2007 WL 2460843, at *6 (D. Kan. Aug. 24, 2007). Petitioner is not entitled to relief on this ground.

### Conclusion

For the reasons discussed, the Court concludes that petitioner has not established any instance where the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Further, the record conclusively shows that petitioner is not entitled to relief. Accordingly, no evidentiary hearing is required. <u>See</u> <u>United States v. Marr</u>, 856 F.2d 1471, 1472 (10th Cir. 1998) (no hearing required where factual matters raised by § 2255 petition may be resolved on record).

### Certificate Of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court indicates "which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). In addition, when the court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

The Court concludes that a certificate of appealability should not issue in this case. Nothing suggests that the Court's ruling resulting in the dismissal of this action is debatable or incorrect. The record does not suggest that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that the Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. #1) filed September 2, 2015 is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2254 petition is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's Motion For Summary Judgement [sic] Granting The Petitioner's Writ Of Habeas Corpus (Doc. #14) filed July 26, 2017 is **OVERRULED**.

Dated this 5th day of February, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court