IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAFAYETTE D. COSBY, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> WARDEN DAN SCHNURR, ) <br> ) <br> Respondent. ) <br> _____) | CIVIL ACTION <br><br> No. 15-3213-KHV |

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, pro se petitioner LaFayette D. Cosby, an inmate at Ellsworth Correctional Facility in Ellsworth, Kansas, seeks a writ of habeas corpus claiming various constitutional violations arising from his state court conviction for first degree murder. See Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. #1) filed September 2, 2015. On February 5, 2018, the Court denied the petition and denied a certificate of appealability.[1] See Memorandum And Order (Doc. #15). This matter comes before the Court on petitioner's Motion For Reconsideration (Doc. #17) filed February 16, 2018. For reasons stated below, the Court overrules the motion.

### Legal Standards

Rules 59(e) and 60, Fed. R. Civ. P., govern motions to reconsider dispositive orders or judgments. See D. Kan. Rule 7.3(a). Whether the Court analyzes the motion under Rule 59(e) or Rule 60(b) depends on when plaintiff filed the motion. See Crawford v. U.S. Marshals Serv., No. 18-2003-KHV, 2018 WL 2220850, at *1 (D. Kan. May 15, 2018) (citing Hawkins v. Evans, 64 F.3d 543, 546 (10th Cir. 1995)). A Rule 59(e) motion to alter or amend judgment must be filed

---

[1] The following day, on February 6, 2018, the Court entered judgment. See Doc. #16.

within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). A Rule 60(b) motion, on the other hand, "must be made within a reasonable time," and if the motion is brought under subsections (b)(1), (2) or (3), no more than a year after entry of the judgment or order. Fed. R. Civ. P. 60(b).[2]

Here, because petitioner filed the motion within 28 days of the entry of judgment, the Court treats it as a Rule 59(e) motion to alter or amend the judgment. See Crawford, 2018 WL 2220850 at *2. Under Rule 59(e), the Court may reconsider a final decision if the moving party can establish (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[3] Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir.

---

[2] Under Rule 60(b), Fed. R. Civ. P., the Court may relieve a party from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

[3] Although the Tenth Circuit has not precisely defined "manifest injustice" within the context of Rule 59(e), this Court has described the term to mean "direct, obvious, and observable error." Tri-State Truck Ins., Ltd. V. First Nat'l Bank of Wamego, No. 09-4158-SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011) (quoting Black's Law Dictionary 1048 (9th ed. 2009), and citing Brynberg v. Ivanhoe Energy, Inc., No. 08-cv-2528, 2010 WL 2802649 (D. Colo. 2010)). Where plaintiff seeks reconsideration to prevent manifest injustice, he can prevail only if he
(continued...)

2000). Such a motion is appropriate when the Court has misapprehended a party's position, the facts or controlling law, or the Court has "mistakenly decided issues outside of those the parties presented for determination." In re Sunflower Racing, Inc., 223 B.R. 222, 223 (D. Kan. 1998) (citing Anderson v. United Auto Workers, 738 F. Supp. 441, 442 (D. Kan. 1990)). Rule 59(e) does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier. Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1332 (10th Cir. 1996); Servants of Paraclete, 204 F.3d at 1012. A party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to reconsider. Cline v. S. Star Cent. Gas Pipeline, Inc., 370 F. Supp.2d 1130, 1132 (D. Kan. 2005). Whether to grant a motion for reconsideration is committed to the Court's discretion. See Hancock v. City of Okla. City, 857 F.2d 1394, 1395 (10th Cir. 1988).

## Analysis

In denying habeas corpus relief, the Court found that petitioner had not shown that failure to consider his procedurally-defaulted claims would result in a fundamental miscarriage of justice.[4]

---

[3](...continued)
demonstrates injustice that is "indisputable." Id. (quoting Shirlington Limousine & Transp., Inc. v. United States, 78 Fed. Cl. 27, 31 (2007)).

[4] The Court found that petitioner had procedurally defaulted on seven of 12 claims which he asserted in the case. See Memorandum And Order (Doc. #15) at 7-8, 11-15. Specifically, the Court found that petitioner had procedurally defaulted on the following claims: (1) during a hearing on a motion to dismiss, the trial court refused to hear evidence regarding police bad faith and key impeachment witnesses (Ground 3); (2) in forcing him to rely solely on evidence presented by counsel, the trial court obstructed his ability to introduce exculpatory evidence (Ground 4); (3) in defending him under known conflicts of interest, trial counsel was ineffective (Ground 7); (4) in not objecting to the prosecutor's use of perjured testimony, trial counsel was ineffective (Ground 8); (5) in not objecting to the prosecutor's improper bolstering of credibility of state witnesses, trial counsel was ineffective (Ground 9); (6) new facts demonstrate actual innocence (Ground 10); and (7) the
(continued...)

See Memorandum And Order (Doc. #15) at 11-15.  Petitioner asks the Court to reconsider its ruling.

See Motion For Reconsideration (Doc. #17) at 4-7  Petitioner asserts that in Exhibit A1F1 (Doc. #2)

filed September 4, 2015, he presented over 350 pages of evidence which corroborate his defense

claims.[5]  See id.  Petitioner asks the Court to determine whether any of the evidence contained in

Exhibit A1F1 (Doc. #2), if admitted, would  have made it more likely than not that the jury would

have acquitted him of first degree murder.[6]  See id. at 5.

---

[4](...continued)
cumulative effect of trial errors caused substantial prejudice and denied him a fair trial (Ground 11).
See Memorandum And Order (Doc. #15) at 15.  Regarding the defaulted claims, the Court found
that unless petitioner could show that failure to consider the claims would result in a fundamental
miscarriage of justice, the claims are procedurally barred from federal habeas review.  See id. at 12-
13.

The Court addressed the merits of the following claims, which were not procedurally defaulted: (1) in failing to raise petitioner's Section 60-1507 claims on direct appeal, appellate counsel was ineffective (Ground 1); (2) in refusing to appoint substitute counsel, the trial court imposed ineffective and biased counsel and failed to conduct a proper inquiry into the details and nature of the attorney-client conflict and counsel's conflicts of interest (Grounds 2, 5 and 6); and (3) the state courts failed to provide a full and fair hearing to argue the merits of petitioner's claims (Ground 12).  See id. at 16-30.

[5]     Petitioner asserts that Exhibit A1F1 (Doc. #2) contains

> over 350 pages of material items of evidence including sworn and other statements of various witnesses, Police Reports, Trial Transcripts, perjured statements of State witnesses, falsified science experts, Crime Scene investigation reports, and a host of various evidentiary items, all of which only comprise a fraction of the evidence corroborating petitioner's defense claims[.]

Motion For Reconsideration (Doc. #17) at 4.

[6]     Petitioner admits that "a significant number of [his] evidentiary exhibits are somewhat ambiguous offering only a mere scintilla of supporting facts for [his] claims."  Id. at 4. He asks that the Court "make a reasonable determination of whether, not necessarily all, but any of the evidence . . . if admitted, would have made it more likely than not that the Jury would have acquitted him of the charge of [First] Degree Murder."  Id. at 4-5.

To satisfy the fundamental miscarriage of justice exception, plaintiff must make a credible showing of actual innocence, i.e. he must support his allegations of constitutional error with new reliable evidence[7] which, if admitted, would have made it more likely than not that the jury would have acquitted him. See Memorandum And Order (Doc. #15) at 14 (citing Cummings v. Sirmons, 506 F.3d 1211, 1224 (10th Cir. 2007)). In denying habeas corpus relief, the Court found that petitioner did not make such a showing. More specifically, the Court found that aside from conclusory and self-serving statements, petitioner provided no evidence which supported his assertion of actual innocence.[8] See id. at 15 n.15 (citing Exhibit A1F1 (Doc. #2)).

Petitioner asserts that the documents contained in Exhibit A1F1 (Doc. #2) demonstrate that at the time of the shooting, Robert Martin posed "a serious threat of imminent danger" which justified deadly force to defend petitioner's dwelling and the lives of his friends therein. Exhibit A1F1 (Doc. #2) at 2. Specifically, petitioner asserts that the documents show that (1) Martin harbored a personal and murderous vendetta against petitioner for the death of his close friend and gang leader, David Walker; (2) Martin also had "bad blood" with petitioner's best friend, Alan Johnson; (3) Johnson had received recent death threats due to a hostile altercation with Martin's associate; (4) on the night of the shooting, Martin conspired with Chad Davis and Andrea Garrison to infiltrate petitioner's residence, armed and heavily under the influence of drugs; (5) immediately before the shooting, Martin covertly manipulated a firearm inside his brown leather

---

[7] As a practical matter, it appears that all of the evidence contained in Exhibit A1F1 (Doc. #2) was available at the time of trial.

[8] The Court noted petitioner's assertion that Exhibit A1F1 (Doc. #2) contains "the most critical facts" that demonstrate his actual innocence. Memorandum And Order (Doc. #15) at 15 n.15.

jacket; (6) forensic evidence would provide "indisputable proof" that at the time of the shooting, no one else was paying attention to what Martin was doing; (7) following the shooting, Davis, Garrison and Lawrence police altered, manipulated and destroyed evidence at the crime scene to eradicate any appearance of threat posed by Martin; (8) Lawrence police had an "outrageous and highly inappropriate relationship" with Martin; (9) Davis and Garrison withheld evidence and offered perjured statements to conceal their conspiracy with Martin; and (10) Martin was one of the "most notorious and dangerous malefactors" that Lawrence has ever known. Exhibit A1F1 (Doc. #2) at 4-14.

In denying the petition for habeas corpus relief – and again in deciding petitioner's motion for reconsideration – the Court has thoroughly reviewed the documents contained in Exhibit A1F1 (Doc. #2). The exhibit contains over 200 pages of detailed factual allegations, see Doc. #2-1 at 1-264, and over 350 pages of documents including witness statements and testimony, law enforcement investigative reports and newspaper articles, see Doc. #2-1 at 265-300 and Doc. #2-2 at 1-357. At most, the documents corroborate some of the circumstantial facts which petitioner asserts, including that (1) petitioner and Johnson had a tense relationship with Martin; (2) Martin and petitioner were members of rival gangs; (3) Martin was known in the community and by police to be violent and unpredictable; (4) Martin was not invited to the party but showed up unannounced with invited guests; (5) the mood of the party became uncomfortable when Martin showed up; (6) before coming to the party, Martin had a telephone conversation with one of his associates in which Martin asked if he should get a gun; (7) many if not all guests at the party were under the influence of alcohol and/or marijuana; (8) immediately after the shooting, while Martin lay dying, none of the witnesses – including petitioner – called the police; (9) before calling the police, witnesses reentered the

apartment to collect belongings and clean up; (10) one witness accidentally retrieved an extra cell phone which may have belonged to Martin that she threw out a car window; (11) police did not arrive on the scene until several hours after the shooting; and (12) police did not test a jacket which was hanging on a chair and apparently belonged to Martin.  See id.

Notably, none of the documents contained in Exhibit A1F1 (Doc. #2) corroborate petitioner's assertion that at the time of the shooting, Martin posed a serious threat of imminent danger which justified the use of deadly force.  To the contrary, every eyewitness – including Johnson and Brianna Moten, petitioner's friends who were not part of the alleged conspiracy to ambush petitioner – stated that (1) they did not see Martin with a weapon; (2) immediately before the shooting, everyone seemed to be enjoying themselves by visiting, listening to music and dancing; and (3) the shooting appeared to be unprovoked.  See, e.g., statements/testimony by Moten, Ex. #346 (Doc. #2-2) at 153 (neither Cosby nor Martin seemed upset), 156-57 (no one agitated or fighting; did not see anyone with gun/weapon), 302-03 (shooting unprovoked; petitioner's actions seemed random); statements/testimony by Johnson, Ex. #346 (Doc. #2-2) at 136 (besides fact that Martin was untrustworthy, no reason to think life in danger), 146 (prior to shooting, Martin made no physically threatening gestures), 147 ("I didn't see him pull anything on me because I was definitely looking for that").  On this record, the Court declines to reconsider its ruling that petitioner did not support his allegations with new reliable evidence which, if admitted, demonstrates that the jury would have likely acquitted him.

Alternatively, petitioner asks the Court to grant him leave to file an appeal.  See Motion For Reconsideration (Doc. #17) at 1-2, 5, 7.  For reasons previously stated, the Court denies the request. See Memorandum And Order (Doc. #15) at 30-31.  Nothing suggests that the Court's ruling

resulting in the dismissal of this action is debatable or incorrect, or that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that petitioner's Motion For Reconsideration (Doc. #17) filed February 16, 2018 is **DENIED**.

Dated this 30th day of May, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court